**Daniel G. PADILLAS, Appellant**

v.

**STORK–GAMCO, INC.**

No. 97–1853.

United States Court of Appeals,
Third Circuit.

Argued June 1, 1999.

Decided Aug. 2, 1999.

Rehearing and Rehearing En Banc
Denied Aug. 31, 1999.*

---

\* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, who sat by designation, as to panel rehearing.

Robert B. White, Jr. (argued), Law Offices of Robert B. White, Jr., Philadelphia, PA, for Daniel G. Padillas, Appellant.

Edmund J. Siegert (argued), Cremer, Kopon, Shaughnessy & Spina, Chicago, IL, John T. Donovan, Rawle & Henderson, Philadelphia, PA, for Stork–Gamco, Inc., Appellee.

Before: SCIRICA and McKEE, Circuit Judges, and SCHWARZER,** District Judge.

** Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## OPINION OF THE COURT

SCHWARZER, District Judge:

Daniel Padillas was injured while washing down the blade of a drum and thigh cutter ("DTC" or "the machine") designed, manufactured and sold by Stork–Gamco, Inc. ("Stork") and owned and operated by his employer, Pennfield Farms. The DTC carries chicken carcasses, hanging by their legs, toward a horizontally rotating blade which separates the drumstick from the thigh. The injury occurred when the high-powered hose Padillas was using to clean the machine became entangled in the overhead conveyor and drew his left forearm into the unguarded edge of the rotating blade. Padillas brought this action against Stork, alleging strict products liability, negligence, breach of warranty and failure to warn. Stork moved for summary judgment, arguing that the report of Padillas' expert, Ralph Lambert, did not meet the test of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The district court excluded the Lambert report and granted Stork's motion for lack of admissible evidence to support an essential element of Padillas' case, i.e., that the machine was defective. The district court had subject matter jurisdiction under 28 U.S.C. § 1332 (1994). We have appellate jurisdiction under 28 U.S.C. § 1291 (1994) and reverse.

## I. PLAINTIFF ESTABLISHED MATERIAL ISSUES OF FACT FOR TRIAL

█ Our review of a summary judgment is plenary. *See Childers v. Joseph*, 842 F.2d 689, 693 (3d Cir.1988). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Stork moved for summary judgment on the ground that "[t]here is no competent evidence of record in this case to satisfy the *Azzarello* standard." The district court held that "[t]he only evidence of defect that Padillas proffered to defend against the motion of Stork–Gamco ... was the report from his expert, Ralph Lambert." Having concluded that this report was not admissible under Federal Rule of Evidence 702, the court determined that Stork had met its burden under Federal Rule of Civil Procedure 56 and granted the motion. The threshold question, therefore, is whether Padillas offered evidence apart from the Lambert Report sufficient to raise a triable issue of fact.

█ Because this is a diversity case, Pennsylvania products liability law controls. The Pennsylvania Supreme Court held, in *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (Pa.1978), that "in this type of case, the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Id.* at 1027; *see also Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1044 (3d Cir.1997); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 902 (Pa.1975) ("A 'defective condition' is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use.").[1] Thus, the

---

1. Under the analysis adopted by the district court, it bypassed the threshold determination

burden on Padillas in opposing Stork's motion was to come forward with evidence from which the jury could find that the machine lacked an element necessary to make it safe or possessed an element that made it unsafe for its intended use. In his opposition to the summary judgment motion, Padillas proffered not only the Lambert Report but also the following additional evidence:

(1) A report (predating the accident) co-authored by Stork–Gamco's engineering manager responsible for the design of the Stork machines addressing problems with the machine that injured Padillas, including " *Safety concerns*—not well guarded."

(2) A memorandum (also predating the accident) from a Pennfield employee to a representative of Stork referring to the machine's "Safety Problems ... Many blades unguarded."

(3) Evidence that the design of this machine was derived from a machine designed and manufactured by Stork's sister company, which provides a guard extending over a larger segment of the cutting edge of the blade, both vertically and horizontally, than the guard on the machine at which Padilla was injured.

(4) Evidence that following the accident, Pennfield installed a tubular steel guard at the point where the Stork guard had ended.

This evidence is probative of the existence of a condition that a reasonable jury may find made the machine unsafe for its intended use. We must consider, however, whether a jury would be permitted to return a verdict on this evidence standing alone, assuming the exclusion of the Lambert Report. If so, summary judgment was erroneously granted.

We have not directly addressed the specific issue of when expert evidence is required in a products liability case although we have declared, in dictum, that "[i]n

addition to expert testimony on design defect, a defective condition in a product can be established by the presentation of other types of circumstantial evidence." *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 101 (3d Cir.1982) (citing Pennsylvania cases). We have, however, recently considered the issue in the context of a Jones Act negligence claim. In *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350 (3d Cir.1998), plaintiff was swept off the deck of a tug when he was ordered to haul a line on board during a violent storm producing enormous waves causing the tug to roll and pitch. *See id.* at 357–59. The court held that the jury did not require expert evidence to understand that the reason plaintiff was in a position to be swept overboard was because he had been ordered to haul the line on deck and that if the line had been disconnected from the tug, there would have been no need to haul it on board, because "persons of common understanding could comprehend the primary facts offered by Wilburn to demonstrate the cause of his injuries." *Id.* at 359, 360.

*Wilburn* relied on *Salem v. United States Lines*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962), holding that expert testimony was not required to support a verdict of negligence and unseaworthiness in favor of Salem who had been injured as he moved from a ladder to a platform leading to the vessel's crow's nest. The Court observed, after noting that there was evidence in the form of testimony and photographs from which the jury could clearly see the construction of the crow's nest, that if there were peculiar facts and circumstances which made it impossible for a jury to decide intelligently, it had not been told what they were and the record disclosed none. *See id.* at 34–35, 82 S.Ct. 1119. Expert evidence is not necessary, the Court held, " 'if all the primary facts can be accurately and intelligibly described

---

as to whether the product's condition justifies placing the risk of loss on the manufacturer, a question of law that remains to be addressed

by the court on remand. *See Surace,* 111 F.3d at 1044.

to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Id.* at 35, 82 S.Ct. 1119 (quoting *United States Smelting Co. v. Parry*, 166 F. 407, 415 (8th Cir.1909)). Here the district court opined, without explanation, that "[t]his case presents complex and technical questions of product design and causation." But because this case is at the summary judgment stage, it is premature to rule out that testimony and pictures may enable the jury to clearly see the construction of the machine and the manner of its use, rendering expert evidence unnecessary. We hold only that on the record before us, we cannot exclude the possibility that plaintiff's non-expert evidence will be sufficient to submit his claim of defect to the jury.[2]

## II. THE COURT FAILED TO FOLLOW PROPER PROCEDURE IN EXCLUDING EXPERT EVIDENCE

As a part of its opposition to Stork's summary judgment motion, Padillas offered a report prepared by Ralph A. Lambert, a mechanical engineer with over twenty-five years of in-plant and technical experience in industrial operations, maintenance and construction systems, and manufacturing process design, including food processing machinery. Lambert's report detailed his findings regarding the machine and analyzed its operation. It concluded, in substance, that the failure to provide a guard that prevented the snagging of the hose during wash-down and to provide protection for workers against contact with the cutting blade "resulted in a defective machine with a dangerous and hazardous condition that was the cause of the accident."

The district court correctly ruled that the analysis under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), applied to technical expert evidence, such as the Lambert Report, as much as to scientific evidence, and the Supreme Court subsequently so held in *Kumho Tire Co. v. Carmichael*, —— U.S. ——, ——, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999). The court went on to hold that the report did not pass muster under Rule 702 and *Daubert*, reasoning as follows:

> Lambert provides no basis for the conclusions and observations that he makes. He does not indicate his research or experience in this area. His curriculum vitae indicates he has had experience with cutting machines, but it does not indicate whether he has experience in the design of these machines from which some methodology or design efficacy might emerge. He does not set forth in his report the methodology by which he made his determinations in this case. He does not indicate that he conducted any tests or what the testing techniques were.... [H]e mentions the four "recognized" levels of analysis of a hazardous work zone on a machine, but he does not provide citations as to where these levels of analysis are derived or by whom they are recognized. Lamberts's comparison of the Stork–Gamco Drum and Thigh Cutter to another model of cutting machine is not helpful, mainly because the other model has a different guard, and I find that attempt at comparison is confusing. Lambert does not explain or provide support as to whether this different guard would have been viable on the Drum and Thigh Cutter or how it would have prevented Padillas' injuries.
>
> . . .

---

**2.** Given the posture of this case, and the district court's narrow ruling on lack of evidence of a defect, we need not consider other potential issues that may arise in this products liability action.

The Lambert Report is filled with conclusory statements about the defective condition of the Drum and Thigh Cutter and how it caused Padillas' injury. However, the only support for these conclusions are Lambert's own beliefs, which . . . in totality fail to include any of the *Daubert* or *Downing* factors and thus are not enough to sustain the burden upon Padillas in this case.

We do not reach the question whether the district court abused its discretion in holding the Lambert Report to be inadmissible under Rule 702. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Our concern is with the process by which the court arrived at its ruling. *Daubert* teaches that "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786 (footnotes omitted).[3] "The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity—and thus the evidentiary relevance and reliability—of . . . the proposed submission." *Id.* at 594–95, 113 S.Ct. 2786.

■ We have long stressed the importance of in limine hearings under Rule 104(a) in making the reliability determination required under Rule 702 and *Daubert. See United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir.1985) ("It would appear that the most efficient procedure that the district court can use in making the reliability determination is an in limine hearing."). In *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829 (3d Cir.1990), we reversed a summary judgment for defendants because the district court, in excluding expert evidence under Rule 703, had failed to "provide[ ] the plaintiffs with sufficient process for defending their eviden-

tiary submissions." *Id.* at 854. We explained:

The adversarial process upon which our legal system is based assumes that a fact finder will give the parties an adequate opportunity to be heard; if it does not, it cannot find facts reliably. Thus, the detailed factual record requirement, firmly entrenched in our jurisprudence, requires adequate process at the evidentiary stage, particularly when a summary judgment may flow from it.

*Id.* (citations omitted). We reiterated our *Paoli* holding in *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 272 (3d Cir.1991) ("A detailed factual record is required at the evidentiary stage, particularly when a summary judgment may result."). And in *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir.1994), we declared:

Given the "liberal thrust" of the federal rules it is particularly important that the side trying to defend the admission of evidence be given an adequate chance to do so.

*Id.* at 739 (citation omitted); *see also* Margaret A. Berger, *Procedural Paradigms for Applying the Daubert Test*, 78 Minn. L.Rev. 1345, 1365 (1994) (reviewing admissibility of expert testimony in light of the "liberal thrust" of the Federal Rules of Evidence).

■ That plaintiff may not have requested a hearing—as the district court noted—is immaterial for at least two reasons. First, because the court has an independent responsibility for the proper management of complex litigation. *See Paoli*, 916 F.2d at 854 n. 29a. Second, because plaintiff could not have known in advance the direction the district court's opinion might take and thus needed an opportunity to be heard on the critical issues before having his case dismissed. *See id.* at 855. The need for this opportu-

---

**3.** Federal Rule of Evidence 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court."

nity is compelling because the burden of establishing admissibility by a preponderance of the evidence, as the district court acknowledged, is on the proponent. *See Daubert*, 509 U.S. at 592 n. 10, 113 S.Ct. 2786 (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)); *see also Berger, supra.*

The district court's analysis of the Lambert Report does not establish that Lambert may not have "good grounds" for his opinions, *see Daubert*, 509 U.S. at 590, 113 S.Ct. 2786, but rather, that they are insufficiently explained and the reasons and foundations for them inadequately and perhaps confusingly explicated. But if the court was concerned with the factual dimensions of the expert evidence, as we said in *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1240 (3d Cir.1993), "it should have held an *in limine* hearing to assess the admissibility of the [report]," giving plaintiff an opportunity to respond to the court's concerns. The First Circuit put it well when it said:

> The fact that *Daubert* can be used in connection with summary judgment motions does not mean that it should be used profligately. A trial setting normally will provide the best operating environment for the triage which *Daubert* demands.... [G]iven the complex factual inquiry required by *Daubert*, courts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record.

*Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir.1997). An in limine hearing will obviously not be required whenever a *Daubert* objection is raised to a proffer of expert evidence. Whether to hold one rests in the sound discretion of the district court. But when the ruling on admissibility turns on factual issues, as it does here, at least in the summary judgment context, failure to hold such a hearing may be an abuse of

discretion. We hold that in this case, it was. Accordingly, we VACATE the *ruling* excluding the Lambert Report but express no view on the merits of the ruling.

The judgment is REVERSED and the matter REMANDED for further proceedings.