**James KERRIGAN, Plaintiff**

v.

**MAXON INDUSTRIES, INC., Defendant**

**and Stowell Industries, Third–Party Defendant**

No. 98CV5482.

United States District Court, E.D. Pennsylvania.

April 16, 2002.

Brian E. Appel, Groen, Laveson, Goldberg & Rubenstone, Bensalem, PA, for Plaintiff.

Felix P. Gonzalez, Mark J. Hill & Associates, Mark J. Hill, Marie Sambor Reilly, Mark J. Hill & Associates, PC, Jack Meyerson, Jack Meyerson, Esquire, Thomas L. Delevie, Sweeney and Sheehan, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

### I. *INTRODUCTION*

This Memorandum considers Defendant Maxon Industries, Inc.'s motion to exclude and/or limit the testimony of Plaintiff James Kerrigan's proffered expert witness, Robert A. Novicelli, filed on December 14, 2001; Plaintiff's response thereto, filed on January 23, 2002; and Defendant's Reply Brief, filed on March 19, 2002.

### II. *STANDARD OF REVIEW*

Federal Rule of Evidence 702, which governs the use of expert testimony in federal courts, reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule on expert testimony essentially codifies the principles enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny of cases. *Daubert* charges trial judges with the responsibility of acting as gatekeepers to exclude unreliable proffered expert testimony. *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786; *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (extending *Daubert's* framework for evaluating scientific expert testimony to technical and other expert testimony). Courts must determine whether (1) the proposed witness is a qualified expert in the area in which he or she is being offered as an expert; (2) the proposed expert's testimony is reliable and (3) the expert's testimony will assist the trier of fact. *In re Paoli Railroad Yard PCB Litig.,* 35 F.3d 717, 741–43 (3d Cir. 1994) (quoting *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786). A plaintiff must establish the expert's qualifications and the reliability and fit of the proposed testimony by a "preponderance of proof." *In re TMI Litig.,* 193 F.3d 613, 663 (3d Cir.1999). The trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard. *Kumho Tire,* 526 U.S. at 138–39, 119 S.Ct. 1167; *In re Paoli,* 35 F.3d at 777–78.

### III. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual Background

##### 1. Kerrigan's Accident

On July 28, 1997, Plaintiff James Kerrigan ("Kerrigan") was involved in an accident while driving a truck for his employer, Number One Contracting Company, Inc., which had a contract to pour cement for a state highway cement project. Kerrigan's duties included driving a truck mounted with a cement pouring device called an agitator and transporting cement from the batch mixing plant to the pour site. Kerrigan alleges that as he was returning from the paving site to the company plant, the barrel portion of the cement mixer inadvertently rose and struck a bridge overpass on Route 30 near Lancaster, Pennsylvania. Kerrigan was injured, and brought suit against Maxon Industries, Inc. ("Maxon") and later against Stowell Industries ("Stowell").

##### 2. Composition of Agitator and Chassis

A division of Stowell, the Seaman Company, manufactured the cement mixer bowl and sold it to Maxon. Maxon mounted the mixer bowl on a truck cab and chassis manufactured by Kenworth and supplied to Maxon by Daniel Construction Company ("Daniel"). Maxon sold the agitator in question to Daniel. At some point after the sale to Daniel, a subsequent purchaser removed the agitator that was involved in Kerrigan's accident from the Kenworth cab and chassis and mounted it on the Ford cab and chassis that Kerrigan was driving when the accident occurred.

##### 3. Plaintiff's Proposed Expert

Plaintiff Kerrigan alleges that the cement mixer was defective in design and proffer Robert A. Novicelli ("Novicelli") as an expert who will testify that the agitator was defectively designed because it lacked warning or safety devices to alert the driver to the fact that the agitator was rising while he was driving the truck. Novicelli opines that the vehicle should have had an in-cab warning light or buzzer to alert the driver that the agitator was rising and/or [1]

---

**1.** Although Plaintiff's response to Defendant's motion at one point uses the word "and"

a shut-off valve in the hydraulic line controlling the lifting function of the barrel that would enable the driver to close hydraulic fluid supply to the elevation control while operating the vehicle.[2]

### 4. Procedural History

#### a. Defendant's Motion

On December 14, 2001, Defendant Maxon filed a motion to exclude and/or limit the testimony of Novicelli. In this motion, Maxon argued under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) that Novicelli is not qualified to offer an expert opinion in this case and that Novicelli's opinions are unsupported and not reliable and lack the necessary fit to the issues in this case. Maxon alternatively requested this Court (1) to bar Novicelli from testifying that Maxon should have anticipated that the barrel would inadvertently rise during transit and accordingly should have designed the agitator with backup safety designs; (2) to bar Novicelli from testifying that the previous owners of a sister, exemplar agitator modified the hydraulic control valve and hoist lever because of concerns about the safety of the system; (3) to prohibit Novicelli from testifying that the agitator barrel, when fully raised, was unreasonably high and (4) to bar Plaintiff from showing a videotape of the exemplar agitator because plaintiffs cannot lay the proper foundation showing that the subject agitator and the exemplar agitator

were sufficiently similar to permit a comparison between the two.

#### b. Court's Response

Plaintiff failed to file a timely response to Defendant's Motion, and by order dated January 17, 2002 and docketed January 22, 2002, this Court granted Defendant's Motion to exclude the testimony of Novicelli and entered judgment in Defendant's favor on all claims. On January 23, 2002, Plaintiff filed a response to Defendant's motion, and on January 29, 2002, filed a Motion for Reconsideration of this Court's order entering judgment in Defendant's favor. This court held oral argument and, by order dated February 13, 2002 and docketed February 15, 2002, granted Plaintiff's Motion for Reconsideration; vacated this Court's prior order dated January 17, 2002; and deemed Defendant Maxon's motion to exclude and/or limit the testimony of Novicelli an active motion before this Court. This Court also noted that Plaintiff had filed a response to Defendant's motion on January 23, 2002 and gave Plaintiff's counsel until February 22, 2002 to file any depositions or affidavits necessary to oppose Defendant's motion. In that order, we noted that, consistent with Plaintiff's counsel's representations at oral argument, this authorization for additional depositions or affidavits eliminated the need for a hearing with regard to Defendant's motion. This Court also allowed Defendant fourteen days from the filing of any depositions or affidavits to file a reply brief.

---

rather than "and/or," thereby suggesting that both features are necessary to ensure the agitator's safety, we take Plaintiff's argument to be that either device alone would be sufficient to ensure the agitator's safety. Indeed, Plaintiff's response does indicate that "[e]ither could serve, and redundancy is desirable with safety devices." (Pls.' Response to Defs.' Mot. to Exclude Testimony of Expert Witness Novicelli at at 4–5.)

**2.** Novicelli was initially retained by the worker's compensation insurer of Kerrigan's employer, Rockwood Casualty, to determine the cause of Kerrigan's injuries. Several months after Novicelli submitted his report to the insurance company in which he opined that the agitator lacked appropriate safety mechanisms, Kerrigan retained Novicelli to serve as an expert and to testify as to the same in his case against Mason.

#### c. *Plaintiff's Response*

Plaintiff's response to Defendant's motion argues that Novicelli is qualified to offer his opinion regarding the two proposed safety features. Plaintiff further argues that Novicelli's opinions are supported, reliable and possess the requisite fit to the issues in this case. Additionally, plaintiff argues that this Court should deny each of plaintiffs' claims for alternative relief.

#### d. *Defendant's Reply Brief*

Defendant reiterates in its reply brief, filed on March 19, 2002, the arguments made in its original motion to exclude and/or limit Novicelli's testimony. Defendants argues that Novicelli is not qualified to testify as an expert and that Novicelli's opinions are not based upon sufficient facts and data or reliable principles and methods.

#### e. *Court's Approach*

Defendant Maxon's motion to exclude and/or limit Novicelli's testimony, Plaintiff's response thereto and Defendant's reply brief are active, and are properly before this Court. We first address Novicelli's qualifications, the reliability of his opinions and the fit of his opinions to the issues in this case and then Maxon's requests for alternative relief.

### IV. *DISCUSSION*

#### A. *Daubert Hearing*

#### 1. *Plaintiff's Argument*

Plaintiff's January 23, 2002 response to Defendant's motion to exclude Novicelli's testimony contends that it would be error for this court to grant Defendant's motion without holding an evidentiary hearing regarding Novicelli's qualifications and the reliability of his methodology and results. (Pls.' Response to Defs.' Mot. to Exclude Testimony of Expert Witness Novicelli at 15.) Plaintiff suggests therein that the Court may decline to hold a hearing on the motion only if this Court decides the motion in Plaintiff's favor by finding that the *Daubert* requirements are met and that Novicelli is allowed to testify as an expert. (*Id.*)

#### 2. *Criteria for Determining Necessity of Daubert Hearing*

Subsequent to the filing of Plaintiff's response, this Court issued an order, dated February 13, 2002 and docketed February 15, 2002, that specified that "[c]onsistent with Plaintiff's counsel's statements at oral argument [on Plaintiff's Motion for Reconsideration], ... this authorization for additional depositions or affidavits as eliminating the need for a hearing with regard to Defendant's motion." Based on representations made by Plaintiff's counsel at oral argument and consistent with this portion of the Court's February 13, 2002 order, we hold that a hearing on Defendant's motion to exclude is not required.

We also decline to hold a *Daubert* hearing on alternate grounds. Although a hearing is sometimes required in order for the Court to properly exercise its gatekeeping function, such a hearing is not necessary in all cases, even where the court decides the motion in the movant's favor and excludes the proposed expert testimony. Plaintiff's Memorandum of Law in support of his response to Defendant's motion to exclude misstates the law. *Padillas v. Stork–Gamco, Incorporated,* 186 F.3d 412 (3d Cir.1999), the case relied upon by Plaintiff, does not, as Plaintiff suggests, stand for the proposition that the trial court must always hold a hearing when the court is going to grant a motion to exclude expert testimony. Rather, the thrust of the *Padillas* opinion is that "when the ruling on admissibility turns on factual issues [as it did in *Padillas* ], at least in the summary judgment context,

failure to hold such a hearing may be an abuse of discretion." *Padillas*, 186 F.3d at 418. In *Padillas*, the court in fact decided that because the expert's opinions were insufficiently explained and the reasons and foundations for them were inadequately and confusingly explicated, the trial court could not reach an informed decision as to the reliability of his opinions and, accordingly, should have held a hearing. *See id.* The court held that the trial court's failure to do so constituted an abuse of discretion. *See id.*

However, the *Padillas* court stressed that a *Daubert* hearing is not always required. *See id.* Although the court recognized the importance of in limine hearings in making the reliability determination under Rule 702 and *Daubert*, the court also explained that "[a]n in limine hearing will obviously not be required whenever a *Daubert* objection is raised to a proffer of expert evidence" and emphasized that "[w]hether to hold one rests in the sound discretion of the district court." *Id.*

Thus, we read *Padillas* to require an in limine hearing on a *Daubert* motion not in every case, but before granting a motion to exclude the proffered expert testimony when the record does not clearly explicate the basis of the proffered expert opinion such that the reliability determination cannot be made.

This reading is consistent with the Third Circuit's recent interpretation of *Padillas* in *Oddi v. Ford Motor Company*, 234 F.3d 136 (3d Cir.2000). In *Oddi*, the appellate court held that the district court did not abuse its discretion when it decided to exclude plaintiff's proposed expert testimony without holding a hearing and when it based its decision on only the depositions and affidavits. The court distinguished the record in *Oddi* from the record in *Padillas*. Whereas in *Padillas* the record was scant and the district court had no way of determining how the proffered ex-

pert had arrived at his conclusions, the record in *Oddi* was "far from scant" and included a preliminary report from the expert, an amended report, prepared after the plaintiff's expert reviewed the deposition testimony of a defense expert, an affidavit prepared in response to the *Daubert* challenge raised by the defendants in their summary judgment motion and two depositions of the plaintiff's proposed expert. *See Oddi*, 234 F.3d at 153. According to the court, the district court's conclusion, based on the fullness of the record before it, that there was no need to conduct a hearing before ruling on the *Daubert* challenge was consistent with *Padillas*. *See id.*

Moreover, the *Oddi* court reasoned, the district court's decision was consistent with the United States Supreme Court's ruling in *Kumho Tire. See id.*, 234 F.3d at 153–54. In *Kumho Tire*, the Court approved of the district court's reasoning that the two depositions submitted to the district court provided a sufficient basis for the court to reach its *Daubert* decision and agreed with the district court's corresponding refusal to grant the defendant's request for a *Daubert* hearing to challenge the plaintiff's proffered expert testimony. *See id.* The *Kumho Tire* Court explained:

> The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability as it enjoys when it decides whether or not that expert's relevant testimony is reliable.... Th[e abuse of discretion] standard applies as much to the trial court's decision about *how* to determine reliability as to its ultimate conclusions.

*Oddi*, 234 F.3d at 153–54 (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

Additionally, the Third Circuit has explicitly stated that "[w]e did not intend [in *Padillas*] to suggest that an in limine hearing is always required for ˙ *Daubert* gatekeeping." *In re TMI Litig.*, 199 F.3d 158, 159 (3d Cir.2000).

In sum, *Padillas, Oddi, Kumho Tire* and *In re TMI Litigation* teach that the decision to hold a *Daubert* hearing or to make the *Daubert* decision based on the written record before the court is within the district court's discretion. A hearing is not always required prior to deciding whether to exclude testimony under Rule 702 and *Daubert,* but is necessary before excluding proffered expert testimony when the record does not clearly explicate the expert's opinions or the bases for the opinions such that it is impossible for the court to make the reliability determination.

### 3. *Application of Principles to Present Case*

■ Applying these principles to the present case, we find that there is no need to hold a *Daubert* hearing before deciding Defendant's motion. The record contains (1) Novicelli's curriculum vitae, (2) his report detailing his opinions regarding the alleged design defect, (3) a transcript of his deposition, (4) an affidavit signed by Novicelli and prepared specifically in response to Defendant's motion to exclude his testimony and (5) two videotapes showing the examination of the subject agitator and the exemplar agitator and demonstrating his proposed light and alarm warning device. Unlike the "scant" record before the court in *Padillas,* the record here clearly lays out Novicelli's background, training and experience such that this Court can reach a conclusion regarding his qualifications, and sufficiently and clearly explicates his conclusions and the bases for his opinions such that this Court can judge the reliability of his opinions. We decline to hold a *Daubert* hearing and will proceed

to decide the merits of Defendant's motion based on the written record before us.

### B. *Admissibility of Novicelli's Proposed Testimony*

### 1. *Overview*

### a. *Plaintiff's Tender*

Plaintiff has tendered Novicelli as an expert who will testify that the agitator was defectively designed because it lacked features that were necessary to make it safe for its intended use. Novicelli opines that the agitator should have had devices that would have prevented an accident due to the unintended rising of the agitator while the vehicle was in motion. In particular, Novicelli proposes a design that would have included additional safety features including a valve that would have enable the fluid supply to the elevation control to be shut down while the vehicle was in operation and/or a light and alarm warning system that would have warned the driver that the agitator was rising while the vehicle was in motion.

### b. *Defendant's Objections*

Defendant objects that Novicelli lacks the necessary qualifications to testify with regard to agitators and the proposed safety features. Defendant argues alternatively that even if Novicelli were qualified, his testimony is nonetheless inadmissible because it lacks the scientific reliability required by Rule 702.

### c. *Plaintiff's Response*

Plaintiff responds that Novicelli possesses the necessary practical experience to testify as to the proposed safety features. Plaintiff further argues that Novicelli's methodology is reliable; he has conducted an investigation into the agitator's operation and available safety mechanisms, has conducted tests regarding the proposed

safety features and will also, during trial, demonstrate these features.

### d. *Court's Approach*

We address separately the admissibility of Novicelli's testimony with respect to each of the proposed features.

### 2. *Testimony Regarding Shut–Off Valve*

### a. *Qualifications*

■ The first of Rule 702's major requirements is that a witness proffered to testify to specialized knowledge must be qualified as an expert. *Surace v. Caterpillar,* 111 F.3d 1039, 1053 (3d Cir.1997); *Lillis v. Lehigh Valley Hospital, Inc.,* No. Civ. 97–3459, 1999 WL 718231, at *5 (E.D.Pa. Sept. 3, 1999).

■ Defendant argues that Novicelli is not qualified to testify as an expert in product design and safety. The thrust of Defendant's argument is that Novicelli has no education, training or practical experience in product engineering and design or in equipment safety and therefore cannot offer an opinion as to the proposed safety features. (Defs.' Mot. To Exclude and/or Limit Testimony of Robert A. Novicelli at 9–12.) Defendant highlights that Novicelli has never designed or manufactured agitators and, in fact, has never worked with agitators. (*Id.* at 10.)

Plaintiff responds that Novicelli is qualified to offer an opinion about the safety of the agitator and the need for safety features that would make the agitator safe for its intended operation. Plaintiff rejects the notion that Novicelli must be an engineer with experience in designing agitator equipment in order to offer his opinion. (Pls.' Response to Defs.' Mot. to Exclude Testimony of Expert Witness Novicelli at 6.) First, plaintiff argues that this case does not involve redesigning a product, and, thus, Novicelli need not have design experience. (*Id.* at 3, 6.) Plaintiff also

stresses that Rule 702 does not state a preference for academic training over practical experience and argues that "Rule 702 does not require either academic training or practical experience; any suitable training and education can serve to qualify an expert." (*Id.* at 5.) In conjunction with this point, Plaintiff indicates that Novicelli has practical experience that qualifies him to offer an expert opinion, including "Specialized machinery placement in-shop movement;" "Heavy truck bed and wrecker installation;" and "Heavy truck maintenance and repair." (*Id.* at 7.) Plaintiff suggests that this experience enables him to explain to the jury how the hydraulic system operates and how the proposed shut-off valve would work.

We recognize, as Plaintiff highlights, that Rule 702 does not set forth a strict requirement that the proffered expert witness have formal academic training in order to testify as an expert and is flexible in allowing a variety of experience and training, other than and in addition to formal academic training, to serve as the basis for expert witness qualification. *See Hammond v. Int'l. Harvester Co.,* 691 F.2d 646, 653 (3d Cir.1982). Nonetheless, we stress that the criteria required to qualify an expert turn largely upon the subject matter of the particular opinion to be offered. Here, we find that in order for an expert to be qualified to testify as to the formulation and function of the shut-off valve proposed by Plaintiff, the witness would have to have experience in engineering and designing hydraulic systems. Without such background, the witness would not be qualified to explain how the valve would be integrated into the entire system or how the valve would work to prevent the unintended rising of the cement mixing barrel.

We find that although Novicelli may speak in general terms about the function of the hydraulic system (i.e., that it is the

hydraulic system that enables the agitator to rise), *see infra* at Section IV.B.4., Novicelli lacks the necessary background, experience and training to testify as to the proposed hydraulic line shut-off valve. Novicelli does not have any experience in designing or constructing hydraulic systems or safety devices intended to check their operation. The areas of experience emphasized by Plaintiff, including machinery placement and movement, truck bed wrecker and installation and heavy truck maintenance and repair, do not suggest exposure to hydraulic systems in particular. We agree with Defendant that Novicelli's understanding of the "principles of mechanics involved in the use of the power take-off attached to the engine, and its connection with the hydraulic equipment" (Pls.' Response to Defs.' Mot. to Exclude Testimony of Expert Witness Novicelli at 7) does not establish his ability to testify as to the design and implementation of the proposed hydraulic line safety device and is not sufficient to qualify him to offer an expert opinion in this area. Defendant is correct that "it does not matter that Mr. Novicelli might be able to discuss the basic mechanics with regard to hydraulic installation and possibly safety designs connected with it. What matters, in this case, and where Novicelli is lacking, is that he has no experience and/or expertise in construction equipment design, implementation, testing and/or warnings." (Defs.' Reply Brief at 3.)

*Hammond v. International Harvester Company,* 691 F.2d 646 (3d Cir.1982), the Third Circuit case upon which Plaintiff relies to advance his position, is distinguishable from the instant case. In *Hammond,* the driver of a tractor died after falling from the tractor from which the dealer, at the purchaser's request, had removed the roll over protective structure and side screens ("ROPS") intended to prevent the driver from leaning or falling out of the operator's seat. The widow of the driver brought a products liability action against the manufacturer of the tractor. The jury found that the tractor was dangerous because it lacked a ROPS, and the court entered judgment on the verdict in the plaintiff's favor. On appeal, the manufacturer urged the court to set aside the verdict because the expert witness who testified for plaintiff was not a qualified expert. The court disagreed, rejecting the defendant's argument that he should not have been qualified as an expert because he had no degree in engineering or physics. The court noted that "under Rule 702, an individual need possess no special academic credentials to serve as an expert witness." *Hammond,* 691 F.2d at 653. The court reasoned that the expert was qualified by knowledge and experience. *See id.*

As discussed *supra,* we acknowledge, as did the *Hammond* court, that an expert can be qualified by his/her practical experience. Nonetheless, *Hammond* is distinguishable from the present case. In *Hammond,* the expert was testifying as to a safety feature that came standard with the product but was removed by the manufacturer. As the court reasoned, "the very existence of a safety device which was produced by the manufacturer, and which would probably protect the operator from serious injuries, it itself strong evidence that a tractor lacking such a device is not equipped with every element necessary to make it safe for its intended use." *Hammond,* 691 F.2d at 651. Furthermore, the court stated, the fact that the ROPS was standard equipment on the tractor "reflects the manufacturer's judgment that ... for safety's sake a loader tractor should come equipped with a ROPS. Without a ROPS, ... its design is legally defective." *Id.* In *Hammond,* then, it was a relatively small leap for the expert to conclude that the tractor was defective because it lacked the standard safety feature.

Here, on the other hand, Novicelli proposes to testify as to a hydraulic shut-off valve that is not a standard feature of the agitator and that has not, to this Court's knowledge, even been tested. As compared to *Hammond*, it is a far greater leap for the expert here to conclude that the product is defective without this nonstandard, untested safety feature. Whereas the *Hammond* court concluded that experience in product design was not necessary to qualify the expert, it is reasonable to require such experience in this case and to refuse to qualify Novicelli, who lacks engineering and product design experience, to testify about this proposed safety feature.

Moreover, as discussed *supra*, the credentials that will be required for a witness to qualify as an expert inevitably vary with the subject matter of the testimony. Here, the proposed design, as contrasted with the seemingly simple screen structure in *Hammond*, is relatively complex; it is reasonable to require product design experience where the proposal is mechanically involved as it is here, where the proposed feature must be integrated with the product's hydraulic system.[3]

b. *Reliability*

 Moreover, Plaintiff fails to establish the second requirement under Rule 702 that expert testimony be reliable to be admissible. *See Lillis v. Lehigh Valley Hospital, Inc.*, No. Civ. 97–3459, 1999 WL 718231, at *6 (E.D.Pa. September 3, 1999). In *Daubert*, the Supreme Court suggested a list of factors that a trial judge may consider in making the reliability determination. These include whether the technique has been tested, whether it has been subject to peer review, the potential rate of error and the general acceptance of the technique. *Daubert*, 509 U.S. at 592–94, 113 S.Ct. 2786. In *United States v. Downing*, 753 F.2d 1224, 1238–39 (3d Cir.1985), the Third Circuit suggested three additional factors: the degree to which an expert testifying is qualified, the relationship of a technique to more established methods of scientific analysis and the non-judicial uses to which the scientific technique are put.

 The factors mentioned in *Daubert* and *Downing* do not comprise a rigid test, but rather make up a flexible inquiry into the overall reliability of a proffered expert's methodology. *Lillis*, 1999 WL 718231 at *6. A court has "'considerable leeway' in deciding in each case 'how to go about determining whether particular expert testimony is reliable.'" *Lillis*, 1999 WL 718231 at *6 (quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167). "[T]he standard of reliability is not a high one," but seeks "to exclude so-called 'junk science' and ensure that expert testimony is based on sound methods and valid procedures." *Lillis*, 1999 WL 718231 at *6.

 Defendant argues that "Mr. Novicelli must be precluded from testifying at trial because his opinions are unsupported and unreliable." (Defs.' Motion to Exclude and/or Limit the Testimony of Robert A. Novicelli at 13.) Defendant points out that "Mr. Novicelli failed to provide any plans, drawings or other engineering medium to demonstrate the feasibility and enhanced safety of his proposed designs." (Defs.' Reply Brief at 5.) Defendant also indicates that Novicelli has not tested his proposed safety designs and has presented no data showing that the design would actually work. (*Id.* at 6.) Defendant argues also that Novicelli has failed to prove how the

---

**3.** Additionally, we make note of the procedural posture of the *Hammond* case. The court simply held that the district court did not abuse its discretion in admitting the expert testimony; it did not state that the law compelled the district court to reach that conclusion, or that the court would have erred had it excluded the expert testimony.

safety features would have prevented the accident. (*Id.*)

Plaintiff has several arguments in response. First, Plaintiff states that Novicelli is prepared to offer a demonstration during trial either by using the videotape or by using an agitator/truck parked outside the courthouse to demonstrate the operation of the agitator's controls and the safety devices.

We agree with Defendant that a demonstration of the agitator's hydraulic controls is not sufficient to show how the *safety device* would work in practice. Although Novicelli may utilize the videotape or a vehicle similar to the subject agitator to illustrate how the hydraulic system operates in general and how he theorizes the accident occurred (i.e., to show how the agitator rises and to show how the agitator rose while the vehicle was in transit), *see infra* at Section IV.C.4., he may not utilize such a demonstration to speculate how a shut-off valve, for which he has no drawings, plans or model and for which he has conducted no tests, would make the vehicle safer.

Second, Plaintiff offers Novicelli's affidavit in an attempt to establish the reliability of his methodology. However, we agree with Defendant that this affidavit is more an account of his forensic examination of the subject agitator rather than an informative explanation of the methods upon which he relied to test his theory that the product was defective in design because it lacked the proposed hydraulic shut-off. Nowhere in the affidavit does Novicelli explain the basis for his opinion that the shut-off valve would work in conjunction with the hydraulic system to prevent an accident like Plaintiff's.

Plaintiff also refers repeatedly to the existence of a concrete example of the proposed shut-off valve. (Pls.' Response to Def.'s. Mot. to Exclude Testimony of Expert Witness Novicelli at 7.) Although it is not entirely clear to this Court to which example Plaintiff is referring, Plaintiff may be referring to the fact that Novicelli found a switch on one of the four hydraulic lines of a sister agitator that Novicelli examined that was not part of the original equipment and that Novicelli found that someone had also installed a "coat-hanger-type wire" to hold the lever in place. (*Id.* at 13.) Assuming that Plaintiff is in fact referring to the switch and hanger found on the sister agitator, the existence of the switch and hanger does not establish the reliability of Novicelli's methodology. Because Novicelli has not offered any concrete explanation or demonstration as to the design or operation of his proposed shut-off valve, there is no basis for comparing these items to the proposed shut-off valve. Moreover, as plaintiff admits, this switch was not even attached to the raise-lower line, the component that absent a shut-off valve Novicelli alleges renders the agitator defective.

Novicelli's failure to offer any designs, drawings, plans, demonstrations or working examples of the proposed hydraulic shut-off valve is fatal to a finding by this Court of the reliability of his methodology. Furthermore, as *Downing* indicates, the degree to which an expert is qualified affects the reliability of his/her methodology; Novicelli's lack of product design experience, as discussed *supra* at Section IV. B.2.a., provides additional grounds for finding his methodology regarding the shut-off valve lacking in reliability.

c. *Fit*

The third requirement under Rule 702 is that the expert's testimony assist the trier of fact. *In re Paoli*, 35 F.3d at 742. "There must be a valid connection between the expertise in question and the inquiry being made in the case." *Main*

*Street Mortgage v. Main Street Bancorp, Inc.,* 158 F.Supp.2d 510, 518 (E.D.Pa.2001).

■ Having found that Novicelli lacks the necessary qualifications to testify to the proposed shut-off valve and that his methodology with respect to the shut-off valve lacks reliability, we find that the fit requirement is also not met.

Finding that Rule 702's qualifications, reliability and fit requirements are not met, we hold that Novicelli may not testify as to the proposed hydraulic shut-off valve.

### 3. *Testimony Regarding Warning Alarm and Light*

#### a. *Qualifications*

■ Defendant also objects that Novicelli is not qualified to testify as to the proposed warning light and alarm. Defendant raises the same arguments as it did with respect to the hydraulic shut-off valve; it argues that Novicelli should not be able to offer an expert opinion as to the light and alarm system because Novicelli lacks product design experience and has never worked with agitators.

With respect to the proposed light and alarm system, Plaintiff responds that "[i]n his [Novicelli's] involvement with heavy trucks, it has been imperative that he has an understanding of warning devices, as they are invariably present." (Pls.' Response to Def.'s. Mot. to Exclude Testimony of Expert Witness Novicelli at 7.)

We find that Novicelli also lacks the necessary qualifications to testify as to the proposed light and alarm safety feature. As noted *supra* at Section IV.B.2.a., the criteria required to qualify an expert turn upon the subject matter of the opinion to be offered. Like the shut-off valve, the proposed warning light and alarm would be integrated with the hydraulic system.[4]

As with the proposed shut-off valve, we find that in order for an expert to be qualified to testify as to the function and design of the proposed warning system, the witness would have to have hydraulic engineering and design experience. Without such experience, the witness would not be qualified to explain how the warning system would work in conjunction with the hydraulically operated agitator.

We find that although Novicelli may testify generally about the function of the hydraulic system, *see infra* at Section IV. B.4., he lacks the necessary background, experience and training to testify as to the proposed warning system. We reject Plaintiff's argument that Novicelli is qualified to testify as to this proposed safety device because he has acquired an understanding of warning devices through his experience with the warning devices that are "invariably present" in heavy trucks. Novicelli's experience in heavy truck maintenance and repair generally does not qualify him to testify about a proposed safety design that would be connected to the truck's hydraulic functions. Novicelli lacks the necessary experience in designing and engineering hydraulic systems and safety devices intended to check the hydraulic operation.

#### b. *Reliability*

■ We also find that Novicelli's methodology with respect to the warning light and alarm is not reliable. Although Plaintiff has submitted a videotape showing a light and an alarm that appear to activate upon increases in pressure, this system was tested in isolation. To this Court's knowledge, Novicelli has not connected the apparatus to an agitator to observe and test its function in relation to the vehicle;

---

4. Plaintiff's Exhibit 16A, the videotape submitted by Plaintiff demonstrating the proposed warning system, shows a red light and alarm attached to a pressure gauge and responding to changes in pressure.

nor has Novicelli submitted any plans, drawings or designs showing how this warning device would be integrated into the entire system. Without performing tests on the integrated system or making plans, drawings or designs to illustrate the entire system, Novicelli, who lacks engineering and design experience, has not engaged in a reliable methodology.

### c. *Fit*

Having found that Rule 702's qualifications and reliability requirements are not met, we find that Novicelli's testimony regarding the proposed warning system does not satisfy the fit requirement. Accordingly, Novicelli may not offer an expert opinion as to the proposed warning design.

### 4. *Conclusion Regarding Scope of Novicelli's Testimony*

Given the foregoing, Novicelli may not offer an expert opinion as to Plaintiff's two proposed safety features. Plaintiff, may, however, proffer another expert to testify as to the proposed safety mechanisms. Assuming that the proffered witness possesses the requisite engineering and design experience, has employed a reliably methodology in arriving at his/her conclusions and can offer an opinion that will assist the jury, this Court will qualify the witness to offer an expert opinion regarding how the shut-off valve's and the warning system's design and function would make the agitator safe.

 Novicelli may testify in conjunction with this expert to help to lay the foundation for the expert's opinion. Along these lines, the parties have not squarely addressed in their papers whether Novicelli is qualified to testify as to the overall operation of the agitator and to the cause of Plaintiff's accident. Nevertheless, for clarity's sake, we address it here. We find that Novicelli is qualified to explain to the jury how an agitator generally operates.

Novicelli's experience with truck mechanics and repair qualifies him to testify, for example, as to how the agitator is mounted to the truck chassis and to the fact that the agitator, by virtue of the hydraulic system, is capable of rising. Novicelli's explanation will assist the trier of fact. Although jurors may be familiar with the overall appearance of a cement mixing truck, many will have only a limited understanding of the agitator's function, and Novicelli's testimony will aid their understanding.

Additionally, Novicelli may testify as to the cause of Plaintiff's accident. Novicelli's curriculum vitae indicates that he has significant experience with accident reconstruction and repair of damaged vehicles. Accordingly, Novicelli is qualified to explain to the jury that the accident occurred when the cement mixing barrel rose and struck the underside of a bridge overpass. These conclusions are based on reliable methodology, which included examining the subject vehicle and an exemplar vehicle and receiving information from eye witnesses to the accident. His explanation will assist the jury in assessing the cause of the accident and the existence of any design defect.

### C. *Alternate Relief*

### 1. *Exclusion of Testimony by Novicelli that Maxon Should Have Anticipated Unwanted Rising of Agitator*

Defendant seeks to prevent Novicelli from testifying that Maxon should have anticipated that the agitator would inadvertently rise during transit and therefore should have installed a safety feature. Defendant contends that Novicelli has not offered studies, reports, surveys or other statistical analyses concerning instances in which agitator barrels unexpectedly rise during transit and therefore objects that

the necessary foundation for him to offer such an opinion is lacking.

We decline to issue a ruling on this objection at this time. Plaintiff may provide the necessary foundation for this opinion through other witnesses and evidence at trial, in which case Novicelli or another expert offered by Plaintiff would be permitted to testify as to whether the manufacturer should have anticipated the unwanted rising of the barrel.

2. *Exclusion of Testimony by Novicelli that Previous Owners of Sister Agitator Modified Hydraulic Valve Because of Safety Concerns*

■■■ Defendant seeks to prevent Novicelli from testifying that the previous owners of the exemplar, sister agitator that Novicelli examined had made modifications to its hydraulic control valves because of safety concerns.

We hold that Novicelli lacks the necessary foundation to testify that these modifications were made for safety reasons. Novicelli must have some reason for making the leap from the fact that modifications to the valves were discovered on the exemplar vehicle to the conclusion that they were made due to safety concerns. Plaintiff has failed to put forth any such basis. First, Plaintiff has not established that Novicelli has experience with features designed to control the operation of hydraulic systems that would enable him to draw this inference. Novicelli has not indicated any experience that would, for example, allow him to argue that modifications like the switch attached to the exemplar vehicle are commonly attached for the purpose of addressing safety concerns such that it would be reasonable for him to opine that in this instance, the modifications were installed for such safety reasons. Nor has Novicelli alleged any personal knowledge (e.g., through speaking with the owner of the exemplar vehicle) that would enable him to conclude that the changes were made for safety reasons. Novicelli has not shown that he has any reason to think that these changes were made for safety reasons rather than, as Defendant alleges they were, to hold the levers in place so that repairs to the hydraulic line could be performed.

■■■ Nor may Novicelli testify to the existence of these modifications in order to show the feasibility of a shut-off system that would control the raise-lower line. Having decided in this Memorandum that Plaintiff's expert may not offer an expert opinion as to the proposed shut-off valve, the feasibility of such a design is irrelevant. Moreover, even had we not excluded testimony by Novicelli as to the proposed shut-off valve, this evidence would have minimal, if any, relevance. Lacking any basis for concluding that the modifications were made for safety reasons or in fact effectuated a more safe operation of the agitator, Plaintiff would be hard pressed to show, by reference to these modifications, the feasibility of Novicelli's proposed shut-off valve. Such testimony would also present concerns under Federal Rule of Evidence 403; whatever minimal relevance such testimony possesses would be substantially outweighed by the risk of confusion of the issues.

3. *Exclusion of Testimony by Novicelli that Barrel Was Unreasonably High*

■■■ Defendant seeks to exclude testimony by Novicelli that when fully raised, the agitator barrel was unreasonably high. It is unclear what Defendant means by "unreasonably high." Insofar as Defendant is referring to the fact that when fully extended, the barrel was too high to clear the underside of the bridge, Defendant's request is denied. As stated *supra* at Section IV.B.4., Novicelli may testify about the cause of the accident (i.e., that the

barrel rose and struck the underside of the overpass). Novicelli has measured the height capability of the sister agitator and may testify as to its measured height capability in relation to the overpass clearance of the bridge involved. Novicelli may also testify as to the height capability of the agitator insofar as this evidence relates to the need for the proposed light and alarm safety feature.

### 4. *Exclusion of Videotape Depicting Exemplar Agitator*

Defendant seeks to preclude Novicelli from showing a videotape that he made of the exemplar agitator and from comparing it to the subject agitator. Defendant appears to raise two separate grounds for exclusion: spoliation and lack of foundation. Defendant first argues that "[p]ermitting Mr. Novicelli to testify in such a manner is wholly unfair to the Defendants as the subject hydraulic control valve assembly is missing, and this is integral to the operation of the subject agitator. No Defendant had the opportunity to examine same [sic], as it was spoliated." (Defs.' Mot. To Exclude and/or Limit Testimony of Robert A. Novicelli at 9–12.) We addressed the alleged spoliation of this piece of evidence in our order dated June 30, 2000 denying Defendant Stowell's motion for summary judgment. There, we noted that there was a material dispute as to whether spoliation by Plaintiff actually occurred. This dispute still exists. Without certain evidence that Plaintiff caused the spoliation of the hydraulic valve control system, we decline to exclude the videotape on spoliation grounds.

■■ Moreover, we reject any argument by Defendant that an adequate comparison of the two agitators is impossible since the subject valve system is missing and, accordingly, that the videotape should be excluded on spoliation grounds. As we noted in our June 30, 2000 order address-

ing Defendant Stowell's motion, "even assuming spoliation of evidence, given that a design defect is common to all products of the same model, . . . the prejudice to Defendant would be slim at best." As we explained there, "in a case alleging design defect, one need only examine other samples from the same product line in order to determine whether the alleged defect exists . . . and was capable of causing the injury alleged. Presumably, if similar valves are examined in the context of the entire machinery, and the machinery is determined not to be defective, the claim of design defect would fail." The same reasoning applies to Defendant's request here.

■■ Defendant also argues that Novicelli has not established any foundation that would permit a fair comparison between the two agitators. (Defs.' Mot. To Exclude and/or Limit Testimony of Robert A. Novicelli at 9–12.) We reject this argument. We believe that Novicelli's report lays an adequate foundation for a comparison between the two agitators. Novicelli's report indicates that the subject and sister agitators were manufactured with the same specifications such that the height and other dimensions of the two agitators can be expected to be comparable. With respect to the hydraulic control valve bank and lever assembly, Novicelli's report indicates that the pivot and attachment points were similar in design and function to the subject vehicle. Assuming that Novicelli can recollect the subject and exemplar control valves and can elaborate on his report by testifying as to the similarities and as to any differences between the agitators, the necessary foundation for a comparison between the two will be laid. Contrary to Defendant's assertions, the fact that the subject control valve assembly was in a different condition, whether due to poor maintenance or to the accident or other-

wise, than the exemplar assembly does not preclude the showing of this tape. As we have noted, this is a design defect case and not a manufacturing defect case and, accordingly, "[w]hether the specific valve involved in Plaintiff's accident was improperly maintained or altered has no bearing on th[e design defect] issue." (Order Dated June 30, 2000.) We decline to preclude the showing of the tape on these grounds at this time; we will allow Novicelli an opportunity to lay this foundation.[5]

### D. *Defendant's Renewal of Motion for Summary Judgment*

Defendant also renews its April 14, 2000 motion for summary judgment. Our order dated June 20, 2000 and docketed June 21, 2000 denied Defendant's April 14, 2000 and April 21, 2000 motions for summary judgment on the basis that outstanding issues of material fact existed precluding us from granting summary judgment. We continue to adhere to this determination.

### V. *CONCLUSION*

We grant Defendant's Motion to Exclude and/or Limit the testimony of Robert A. Novicelli. Novicelli may not offer an expert opinion as to the proposed hydraulic shut-off valve or as to the proposed warning light and alarm system. However, Novicelli may testify as to the overall operation of the agitator and in general about the cause of Plaintiff's accident.

We decline to rule at this time that Novicelli may not testify that Maxon should have anticipated the unwanted rising of the agitator; Plaintiff may provide the necessary foundation for testimony by Novicelli on this issue.

We grant Defendant's objection as to testimony by Novicelli regarding modifications made to the sister agitator. Novicelli may not testify that the previous owners of the sister agitator modified the hydraulic valve system because of safety concerns; nor may he testify as to the modifications in order to show the feasibility of the proposed shut-off valve.

We deny Defendant's objection that Novicelli may not testify that the agitator barrel was unreasonably high insofar as Defendant objects to any testimony by Novicelli that the agitator barrel was too high to clear the bridge overpass.

We deny Defendant's motion to exclude the videotape showing the subject and sister agitators; assuming that Plaintiff can lay the necessary foundation to permit a fair and useful comparison between the two, Plaintiff may show the videotape.

### *ORDER*

AND NOW, this 15th day of April, 2002, upon consideration of Defendant Maxon Industries, Inc.'s motion to exclude and/or limit the testimony of Plaintiff James Kerrigan's proffered expert witness, Robert A. Novicelli, filed on December 14, 2001; Plaintiff's response thereto, filed on January 23, 2002; and Defendant's Reply Brief, filed on March 19, 2002, it is hereby ORDERED, consistent with the foregoing Memorandum, as follows:

A. Defendant Maxon's Motion to Exclude the Testimony of Robert A. Novicelli is **GRANTED** insofar as:

1. Robert A. Novicelli may not offer an expert opinion as to the design and function of Plaintiff's proposed shut-off valve and warning light and alarm safety devices;

2. However, Robert A. Novicelli may testify as to the overall operation of

---

**5.** Assuming that Novicelli can lay the proper foundation to permit a comparison between the two agitators, relevant questions regarding the differences between the subject and the exemplar agitators will be permitted on cross-examination by Defendant's counsel.

the agitator and the cause of Plaintiff's accident.

B. Defendant's Motion to Further Limit the Testimony of Robert A. Novicelli is **GRANTED IN PART** and **DENIED IN PART**, consistent with Section V. of the foregoing memorandum.