F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**JAN 15 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

IGNACIO SOLORIO, as personal
representative of the estate of Miguel
Ornelas Solorio; FILIBERTO
JIMINEZ and ADELEDA ORELAS
SOLORIO, as heirs of decedent
Miguel Ornelas Solorio,

      Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 02-4227
(D.C. No. 2:01-CV-25-K)
(D. Utah)

ORDER AND JUDGMENT  *

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.


Ignacio Solorio died after being hit by a van driven by Susan L. Michel,

an employee of the Bureau of Land Management (BLM) (an agency within the

United States Department of Interior).  The decedent's estate and heirs filed this

wrongful-death suit against the government under the Federal Tort Claims Act,

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

28 U.S.C. §§ 1346(b)(1), 2671-80 (FTCA). The district court granted summary judgment in favor of the government after excluding the deposition testimony of plaintiffs' expert based on Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Solorio ex rel. Solorio v. United States*, 228 F. Supp. 2d 1280, 1285 (D. Utah 2002). Plaintiffs appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm. [1]

## Factual Background

On April 16, 1999, Mr. Solorio was working at a barricaded construction site next to a main road in Salt Lake City, Utah. Ms. Michel was driving a government-owned van on her way home from a conference. She veered into the construction area, hit a dirt pile and cement barrier, then struck and killed Mr. Solorio. Shortly before the accident, a witness observed the van swerving; shortly afterwards, another witness described Ms. Michel as being in the throes of a seizure. Ms. Michel had never before experienced a seizure.

The parties agree that the timing of Ms. Michel's seizure is the determinative factual issue. "[T]he source of the government's substantive liability under the FTCA is state law." *Boehme v. United States Postal Serv.,*

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

343 F.3d 1260, 1264 (10th Cir. 2003).  The parties do not dispute the district court's statement that "in Utah, a sudden and unforeseeable loss of consciousness that incapacitates a driver does not constitute negligence because the circumstances are beyond the control of the driver    ." *Solorio*, 228 F. Supp. 2d at 1283 (citing  *Porter v. Price*, 355 P.2d 66, 68 (Utah 1960), *overruled on other grounds, Randle v. Allen*, 862 P.2d 1329, 1336 (Utah 1993); footnote omitted). Thus, liability turns on the question of "at what point in time [Ms. Michel] suffered the seizure" and became unable to control her driving. *Id.* at 1284.

Because Ms. Michel has no useful memory concerning the sequence of events, the parties constructed their versions of the facts using expert medical testimony and, to a lesser extent, the testimony of lay witnesses.  Plaintiffs contend that Ms. Michel's seizure was a result, not the cause, of the accident. Their expert, Phillip S. Savia, M.D., a board-certified neurologist, opined that the impact from the accident caused a grand mal epileptic seizure.  Additionally, plaintiffs point to the testimony of a lay witness that the van swerved a few blocks before the accident, but appropriately stopped at a red light and started again when the light changed to green.  Under plaintiffs' theory, Ms.       Michel was able to control the van before the accident, even though she was driving erratically.

The government, in contrast, asserts that the seizure began while Ms. Michel was driving and it was the seizure that caused her to lose control of the van. Its neurology expert, Fumisuke Matsuo, M.D., testified that the swerving of the van was consistent with the initial phase of a seizure. Additionally, an expert in emergency medicine, E. Martin Caravati, M.D., testified that the head trauma to Ms. Michel during the accident was not severe enough to cause a seizure.

The government filed a motion for summary judgment, arguing that plaintiffs could not establish negligence under Utah law. In support, it provided excerpts from the experts' deposition testimony, emphasizing the credentials of its experts and highlighting testimony backing up its theory of the case. It also questioned the basis for the position staked out by plaintiffs. In doing so, the government inserted a footnote citing *Daubert*, 509 U.S. at 590, and stating that "Dr. Savia's subjective belief or unsupported speculation is inadmissible as expert testimony." Aplt's App., Vol. I at 34 n.3.

In their response brief, plaintiffs did not directly address the *Daubert* challenge. They asserted that they had established a prima facie case of negligence because their expert's testimony demonstrated a disputed issue of fact as to when the seizure occurred. They argued that Dr. Savia was qualified to testify as an expert and also provided a statement in which Dr. Savia stated his "99.99 percent" certainty that Ms. Michel did not have a seizure before the

accident. *Id.* at 147-48. They did not, however, provide Dr. Savia's basis for his statement.

The government's reply brief mounted an explicit *Daubert* attack on Dr. Savia's testimony. It argued that Dr. Savia's opinion was so unreliable that it was inadmissible under Fed. R. Evid. 702. The government characterized the opinion as speculative and entirely unsupported by clinical experience or scholarly literature. *Id.* at 165-67.

At the hearing on the government's summary judgment motion, the district court zeroed in on the *Daubert* issue, stating that without Dr. Savia's testimony, it appeared that there was no evidence of negligence. *Id.*, Vol. 2 at 200-01. Defense counsel stated:

> [C]ertainly if the Court wants to have a two- or three-day trial on [the admissibility] point, that would be possible, or I suppose a Daubert hearing to examine just the expert testimony. We feel that it's clear on the record that Dr. Savia has had ample opportunity to find a basis for his opinion. He wrote a report, and he was deposed, and at deposition he admitted that he based a lot of his findings on the assumptions, and he had no support on the literature for his opinion. And he also deferred to Dr. Matsuo as the expert of epilepsy and seizures.

*Id.* at 202.

During the argument of plaintiffs' counsel, the district court again focused on the admissibility issue, asking at one time, "[w]hat if your expert is not permitted to testify because he doesn't meet the requirements of Rule 702," *id.*

at 203, and at another, "[t]ell me why your guy's testimony should come in under Rule 702," *id.* at 204. Counsel responded, but generally stressed Dr. Savia's qualifications, rather than the basis for his opinion; argued the burden of proof; or listed material facts allegedly in dispute. He argued that either both experts were speculating, or neither was.

The government's rebuttal argument included a response to the district court's question that plaintiffs' counsel "says that your expert is speculating as much as his. What do you say to that?" *Id.* at 208. Defense counsel described Dr. Matsuo's citations to medical literature, his interview with Ms. Michel, and his extensive clinical experience. *Id.* Counsel also suggested that a pre-trial *Daubert* hearing could be held. Plaintiffs' counsel, however, did not second the proposal. The court took the suggestion of a *Daubert* hearing under advisement. *Id.* at 212.

The day after the summary-judgment hearing, without additional proceedings, the district court issued a memorandum decision and order. The court determined that plaintiffs had provided no support for Dr. Savia's testimony and therefore excluded the testimony as subjective belief or unsupported speculation. The court also evaluated the opinion testimony of the government's experts and decided that the government's experts had provided "factual bases grounded in accepted scientific methods for their opinions." *Solorio*,

-6-

228 F. Supp. 2d at 1285.  Concluding that Dr. Savia's opinion was essential to plaintiffs' negligence case, the court granted the motion for summary judgment. *Id.*

Plaintiffs have appealed the district court's ruling.  They assert that: (1) the district court's decision to exclude expert opinion testimony was made after inadequate notice and on a truncated record; (2) the court's analysis was based on inaccurate facts; and (3) even without Dr. Savia's opinion, there is a disputed issue of fact as to whether Ms. Michel should have recognized that she was ill before the accident and pulled over to the side of the road.

**DISCUSSION**

*Daubert* "established a 'gatekeeper' function for trial judges under Federal Rule of Evidence 702."  When expert testimony is proffered, the "'trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 592.'"  *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  The judge must "assess the reasoning and methodology underlying the expert's opinion and determine whether it is scientifically valid" and relevant to the case at hand.  *Id.* This court reviews de novo the question of whether the district court applied the proper legal test in evaluating the expert opinion and reviews the court's

evidentiary ruling under the abuse of discretion standard. *Id.* "The testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact." *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

Plaintiffs' first issue is essentially a claim of unfair surprise arising from the district court's exclusion of their expert's testimony. They assert that the court erred in making its ruling in the absence of a separate motion to exclude evidence, an explicitly-noticed *Daubert* hearing, and a complete record.

This court has rejected a similar claim in *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001). In that products-liability suit, the defendant-manufacturer filed a motion to strike the plaintiff's expert testimony and a motion for summary judgment. At a hearing, plaintiff's counsel agreed to strike the expert testimony, to substitute a new expert, and to abandon all theories of liability except a failure-to-warn claim. The district court then granted plaintiff additional time to file a supplemental opposition to defendant's summary judgment motion, focused on the failure-to-warn issue. Plaintiff filed the opposition, attaching the new expert's deposition testimony, and also arguing in favor of the failure-to-warn claim. At the summary judgment hearing, the district court excluded the new expert's testimony, based on the court's finding of unreliability and a lack of qualifications. It also rejected another expert's

affidavit, because the averments in the affidavit contradicted his prior deposition testimony. The court then granted summary judgment in favor of defendant. *Id.* at 968.

One of the plaintiff's contentions on appeal was that she was not informed that the expert's qualifications would be an issue at the summary judgment hearing. *Id.* at 970 n.4. This court rejected the suggestion

> that it was 'unfair surprise' for the district court to have excluded [the expert's] testimony at that time. This contention . . . is belied by the record. In [defendant's reply to the supplemental opposition] an entire section is devoted to the argument that [the expert] was not qualified to render an expert opinion regarding the sufficiency of a warning. This reply was filed . . . eleven days in advance of the [summary judgment] hearing. As the purpose of the hearing was to discuss the issues raised in the parties' supplemental summary judgment papers, it is disingenuous for Plaintiff to now claim that she was unaware that [the expert's] qualifications would be at issue at the hearing.
>
> Nevertheless, [plaintiff] bore the burden of demonstrating to the district court that [the expert] was qualified to render an expert opinion. Accordingly, [plaintiff] cannot now complain that she was unprepared to attend to her burden and discuss her own expert's qualifications at the summary judgment proceeding.

*Id.* There are obvious parallels between the procedure in *Ralston* and in the instant case.

Plaintiffs cite cases from the Third Circuit to support their contention that they were not given adequate process. However, the procedural background of those cases is not comparable. In the case of *In re Paoli Railroad Yard PCB*

*Litigation*, 916 F.2d 829 (3d Cir. 1990), the plaintiffs had no "foreknowledge of the direction that the district court's opinion might take." *Id.* at 855. Further, the district court had failed to conduct an *in limine* hearing, denied oral argument on the evidentiary issues and on the related summary judgment motion, and entered a case management order which restricted the plaintiffs' opportunity to discover the government experts' positions. *Id.* at 854. The facts of *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412 (3d Cir. 1999), are also distinguishable. As in *In re Paoli*, the plaintiff "could not have known in advance the direction the district court's opinion might take" and had no "opportunity to be heard on the critical issues before having his case dismissed." *Id.* at 417.

Here, plaintiffs' assertion of unfair surprise rings hollow. In spite of receiving notice and an opportunity to be heard, they failed to make an adequate showing on the *Daubert* gatekeeping issue. The district court's exclusion of Dr. Savia's expert opinion testimony was not an abuse of discretion.

Also, the court did not abandon its gatekeeping function by admitting the government's expert testimony. In its order, the court summarized the experts' opinions and their underlying factual bases, *Solorio*, 228 F. Supp. 2d at 1281-82, then concluded that they had explained the "accepted scientific methods for their opinions," *id.* at 1285. We see no legal error in the district court's consideration of these expert opinions.

Plaintiffs' next issue is closely related to the first. They assert that the district court based its analysis on incomplete and incorrect facts. On appeal, plaintiffs have submitted complete deposition transcripts. The district court's decision, however, was necessarily based on the deposition excerpts before it at the time of its ruling.

For their final issue, plaintiffs argue that their case should have survived summary judgment even without Dr. Savia's testimony. They rely on a lay witness's testimony that Ms. Michel had managed to stop at a red light and start when it changed to green, claiming that Ms. Michel could have recognized the problem and pulled over to the side of the road before causing the accident. However, the record provides no connection between the ability to stop at a traffic light and self-knowledge of a disabling seizure. To the contrary, defense expert Dr. Matsuo testified that it is unlikely that Ms. Michel's perceptions would have warned her to stop the car. Aplt's App., Vol. 1 at 127-28.

Because we conclude that the district court did not abuse its discretion in excluding Dr. Savia's testimony, and that without his testimony the government

is entitled to judgment as a matter of law, we AFFIRM the district court's entry of summary judgment.

Entered for the Court


Mary Beck Briscoe
Circuit Judge