**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2484-24

SIRIA CARIAS, as mother and
Natural Guardian of M.M.,
an infant,

     Plaintiff-Appellant,

v.

LAURA DALTON, D.O.,
VIRTUA HEALTH, INC.,
VIRTUA WEST JERSEY HEALTH
SYSYTEMS, INC., and VIRTUA
MEDICAL GROUP, PA,

     Defendants,

and

CHIDINMA AROLE, M.D.,

     Defendant-Respondent.

_____

     Argued April 22, 2026 – Decided June 8, 2026

     Before Judges Mayer, Paganelli and Jacobs.

     On appeal from the Superior Court of New Jersey, Law
     Division, Burlington County, Docket No. L-1192-20.

Sherry L. Foley argued the cause for appellant (Foley & Foley, and Joseph Monaco, PC, attorneys; Sherry L. Foley, Timothy J. Foley and Joseph D. Monaco, of counsel and on the briefs).

Christopher M. Wolk argued the cause for respondent (Blumberg & Wolk, LLC, attorneys; Christopher M. Wolk and Dylan T. Stracke, on the briefs).

Abbott S. Brown argued the cause for amicus curiae New Jersey Association for Justice (Lomurro Munson LLC, attorneys; Christina Vassiliou Harvey, Abbott S. Brown, and Jonathan H. Lomurro, of counsel and on the brief).

PER CURIAM

In this medical malpractice matter, plaintiff as mother and natural guardian of M.M.,[1] an infant, appeals from trial court orders of April 26, 2024, barring the testimony of her expert and March 6, 2025, denying reconsideration of the April order and granting summary judgment to defendant Chidinma Arole, M.D.  We conclude the trial court erred in barring the expert's opinion without conducting a N.J.R.E. 104 hearing.  Because the decision to bar the expert's testimony provided the basis for the grant of summary judgment, we vacate the

---

[1] We use initials to preserve the minor's privacy.  R. 1:38-3(f)(2).

April and March orders and remand for further proceedings consistent with this opinion.[2]

I.

On June 18, 2020, plaintiff filed a complaint alleging medical malpractice negligence and lack of informed consent regarding the December 2015 delivery of M.M. Plaintiff alleged M.M. sustained physical injuries and pain and suffering. This appeal concerns the medical malpractice aspect of the litigation. After completion of discovery, defendant moved to bar the testimony of plaintiff's expert, Richard L. Luciani, M.D., and for summary judgment.

In his report, Dr. Luciani noted his "[o]pinions are stated within a reasonable degree of medical probability/certainty." Further, his "[o]pinions are based upon a review of all documents and a thorough understanding of the standards of care applicable in this case at the time the treatment was rendered." He stated his "[k]nowledge regarding standard of care has been learned as a result of residency training, [continuing medical education (CME)], review of gynecological journals[,] textbooks[,] and bulletins, interaction[s] with

_____

[2] Plaintiff's complaint regarding defendants Laura Dalton, D.O., Virtua Health, Inc., Virtua West Jersey Health Systems, Inc., and Virtua Medical Group, PA was dismissed with prejudice on June 7, 2023. These defendants are not participating in the appeal.

colleagues as well as the continuous active practice of OB[/]GYN for over 43 years." He noted he has "been board certified in OB/GYN since 1982 . . . and voluntarily recertified in 2013."

In Dr. Luciani's report, he stated that at M.M.'s "delivery[,] a shoulder dystocia was noted with the anterior left arm stuck under [plaintiff's] pubic bone." Under this circumstance, the doctor opined the standard of care requires "maneuver[s ] such as McRoberts, suprapubic pressure, rotational maneuvers, or delivery of the posterior arm" be implemented to "dislodge the impacted shoulder."

Further, plaintiff's expert explained "[g]entle axial traction . . . should only be used once it is believed that" such maneuvers "dislodged the impacted shoulder." "[A] reasonably prudent OB/GYN in 2015" must use "no more than gentle axial traction . . . on the fetal head in attempting to deliver the shoulder." The doctor opined "[g]entle traction is what is used in a normal delivery. An obstetrician should not use greater force than used in a normal delivery in the face of shoulder dystocia." Further, "[i]f the obstetrician determines that the impact has not been relieved by the maneuvers, traction should be ceased and the obstetrician should then proceed to try another maneuver." (Footnotes omitted).

A-2484-24

At his deposition, Dr. Luciani agreed the delivery record, and Dr. Arole's deposition testimony, established that Dr. Arole "used three different methods to try to release the shoulder, the McRoberts maneuver, suprapubic pressure[,] and a Woods' screw maneuver." In his report, Dr. Luciani noted Dr. Arole stated in her deposition testimony "that continued McRoberts and suprapubic pressure allowed the left anterior shoulder to disimpact." Dr. Luciani testified that the three maneuvers performed by Dr. Arole, alone and without other contributing factors, "would not be a cause of a permanent injury in this case."

Nevertheless, Dr. Luciani opined "[i]f the traction on the baby's head by the obstetrician is more than gentle and/or bends the baby's neck, then it is deemed excessive and below the standard of care." (Footnote omitted). Further, excessive traction "is a known cause of brachial plexus injuries," which are "caused when the nerves are stretched beyond the elastic limit and they rupture or avulse." The doctor opined "[p]ermanent injuries to the brachial plexus nerves are caused by excessive traction, torque, or force on the baby's head away from the fixed shoulder." Moreover, according to Dr. Luciani, "[p]ermanent brachial plexus injuries are not caused by gentle traction."

Dr. Luciani opined "it is clear that Dr. Arole deviated from the standard of care during the delivery . . . by utilizing excessive traction on [M.M.]'s head

5

and neck." Dr. Luciani stated that at delivery, M.M. "was noted to have significant left arm weakness documented to be a brachial plexus injury." The doctor stated a "[s]ubsequent evaluation by Dr. Scott Kozin . . . on [October 23, 2022] noted a C5-C6 brachial plexus injury noted to be permanent in nature after having undergone tendon transfer on [October 1, 2018] with incomplete recovery."

Dr. Luciani considered other causes: "muscle atrophy or other markers consistent with in utero positioning"; "infection or cancer"; predisposition; "biological variance to her anatomy"; and abnormal "maternal contractions and/or pushing." However, the doctor concluded "[t]here are no facts surrounding this delivery that indicate [these] cause[s] exist[ed]."

Regarding "maternal contractions and/or pushing," Dr. Luciani opined that "[u]terine contractions spread . . . gradually creating an expulsive force. The uterine muscle generates no traction force which has clearly been implicated in causing brachial plexus injuries." Moreover, "[a]lthough th[e] magnitude of uterine force alone seems to be sufficient to cause brachial plexus injury, because uterine forces are axially transmitted, they normally do not produce the lateral deviation of the head from the shoulders needed to stretch the brachial plexus beyond its elastic limit." In his report, Dr. Luciani stated there are no

A-2484-24

"facts contained in the medical chart or observations by witnesses that maternal contractions and/or pushing caused this injury." Further, "[t]here is nothing in the record that reflects contractions or pushing were abnormal." Dr. Luciani opined plaintiff's "contractions and push patterns seen on the electronic monitoring [we]re normal."

Dr. Luciani recognized "[t]he theory that the maternal forces of labor can cause a permanent brachial plexus injury [but stated it] is just that: it is a theory that has not been proven either by chart studies, mathematical models, or anecdotal reports." Dr. Luciani opined: the statistical studies fail to "look[] at the amount of traction"; the "[m]athematical models . . . do not replicate and are not similar to human mothers' anatomy, fetus' anatomy, or the forces of labor"; and many "[a]necdotal case reports . . . are reported not by the obstetrician who delivered the baby, but rather based on retrospective record review."

The doctor opined that "a hypothesis that maternal forces of labor can cause permanent brachial plexus injuries has been studied and reported in the literature, [but] it remains an unproven hypothesis." (Footnote omitted). Dr. Luciani stated the "alternative hypothesis . . . that brachial plexus injury is frequently caused during the labor process by uterine forces, still prevails." However, the doctor explained "the maternal forces mobilized during labor and

7

delivery are expulsive in nature, it is difficult to perceive a natural mechanism which could imitate the effect of traction injuries."

Dr. Luciani noted "literature has been published that advances the hypothesis that the maternal forces of labor [are] a cause of permanent brachial plexus injuries," but "none of the literature has been able to in fact prove this is as a mechanism of permanent injuries." Dr. Luciani reviewed the literature and opined it does "not reliably support the maternal forces of labor hypothesis."

Regarding an article authored by Grace Johnson, M.D., Dr. Luciani testified the "conclusions . . . made a lot of sense and it was reasonably reliable for this particular topic." However, Dr. Luciani stated "[t]hey're all animal models" and not supported by "human studies." The doctor acknowledged human studies could not be ethically conducted. Dr. Luciani explained the animal models provide "a good guessing game" but in "reality . . . the pathophysiology of the uterus and its contractions . . . physiologically doesn't work that way." In reaching this conclusion, the doctor relied on his study of "anatomy during the course of [his] career [and] in medical school[,] and . . . practicing medicine for the last 43 years," and the articles cited in his report.

During his deposition, Dr. Luciani was asked whether "any witness . . . testified that they saw Dr. Arole using traction on [M.M.]'s head to deliver the

A-2484-24

shoulder," and he answered "[t]here [wa]s no witness that was looking directly at the delivery process . . . other than Dr. Arole" and "nobody else . . . had a bird's eye view of the actual delivery." Dr. Luciani "agreed" "the medical records . . . do not document the use of traction on [M.M.]'s head."

On April 12, 2024, the judge heard the parties' arguments on defendant's motion. After hearing the arguments, the judge carried the motion to provide defendant with an opportunity to submit the Johnson article. Defendant asserted the article was "peer-reviewed . . . from the University of Baylor" and appeared in the Obstetric and Gynecology Journal. Further, defendant stated the article's "conclusion [is] that inappropriate delivery technique must be the cause of transient or permanent brachial plexus injury is not justified[.]"

According to defendant, during his deposition, Dr. Luciani testified "that he read [the Johnson article], he reviewed it, [and] he thought it was reasonably reliable." Therefore, defendant contended Dr. Luciani "admi[tted] by his own inclusion of this article in his report that you can't say . . . that inappropriate delivery techniques . . . must be the cause of transient or permanent brachial plexus injury." In response, plaintiff argued Dr. Luciani quoted the article "for a different proposition." The parties agreed to revise the relief requested in

9

defendant's motion, withdraw the summary judgment aspect, leaving the judge to focus on whether Dr. Luciani's testimony should be barred.

The matter returned to the court on April 26, 2024. The judge confirmed the original motion was "converted by defense counsel from a motion for summary judgment into a motion to bar the expert report of plaintiff's expert, Dr. Luciani."

The judge stated she had "received some supplemental documentation" including a published article and "a number of different articles that were relied upon by" Dr. Luciani. The judge indicated she did not "plan on having a lot more argument . . . but . . . want[ed] to note that in [her] review of those articles[,] they for the most part seem contrary to [Dr. Luciani]'s opinion."

Plaintiff argued "that evidentiary support of an expert's opinion is not limited to treatises or other type[s] of . . . documentary support, but may include what the witness has learned from his personal experience." Plaintiff further asserted Dr. Luciani employed this approach in rendering his opinion.

Moreover, plaintiff contended "a lot of this is, if anything[,] . . . fodder . . . to cross[-]examine [Dr. Luciani] in front of a jury, and let the jury decide the weight of his testimony." When asked by the judge whether plaintiff could "point to any of the publications" for the proposition "that if there is a permanent

brachial plexus injury, then it must have been caused by excessive traction," counsel noted he "submitted 181 pages of articles" and it would take him "a pretty significant amount of time" to point to a publication, and counsel recognized the judge's "busy schedule." Plaintiff argued "the issue here is that the other potential causes of the injury are essentially eliminated, which leaves only this cause."

Defendant argued the articles "do not stand for the proposition that the only way in which this brachial plexus injury can occur is by pulling too hard, or traction on the head." Defendant contended Dr. Luciani recognized the articles do not support such an opinion. According to defendant, Dr. Luciani opined "there's a permanent injury, which means [Dr. Arole] must have pulled too hard, because that's the only way you can get this injury." Defendant argued Dr. Luciani "can't state that Dr. Arole deviated from the standard of care just by saying there's an injury in this case." Defendant asserted Dr. Luciani's opinion is based on "circular logic that doesn't hold up."

In a decision placed on the record[3] following arguments, the judge reviewed N.J.R.E. 702, N.J.R.E. 703, and the relevant case law. The judge stated "Dr. Luciani has opined that . . . [Dr. Arole] deviated from the standard

---

[3] The judge also authored a substantially similar seven-page written decision.

of care in exerting excessive traction, torque or force on [M.M.]'s head during a vaginal delivery, causing a permanent brachial plexus injury to" M.M. However, the judge found "[a]dmittedly . . . there is no testimony or other record evidence of any observation of such action in the delivery room. In fact, the record evidence is to the contrary."

Moreover, the judge "refer[red] to a sampling of some of the[] publications that [she] had an opportunity to review" and found that "[c]ontrary to Dr. Luciani's opinions[,] the medical research relied upon by Dr. Luciani is juxtaposed." (Emphasis added). The judge concluded the publications "actually relied on by Dr. Luciani himself, do not accept Dr. Luciani's methodology but specifically refute it." (Emphasis added).

The judge acknowledged Dr. Luciani's "decades of experience" and that he had "delivered [a] countless number of babies." However, the judge found "[a]s the evidentiary gatekeeper" and considering "the Daubert[4] factors," she could not "find the opinions or testimony of Dr. Luciani reliable."

Moreover, regarding Dr. Luciani's opinions concerning "excessive force or traction," the judge found in the doctor's deposition, "when asked that this was not []his area of expertise, he admitted . . . 'Yeah. I think that that's -- you

---

[4] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

know, that's a little bit out of my lane.'"  Because the judge perceived a basis for Dr. Luciani's opinion to fall "outside his area of expertise, and because Dr. Luciani ha[d] failed to provide the why and wherefore to support his assertions, Dr. Luciani ha[d] provided nothing more than inadmissible net opinions here."  Accordingly, the judge granted Dr. Arole's motion to bar Dr. Luciani's testimony.

In July 2024, defendant moved for summary judgment and in August, plaintiff moved for reconsideration of the April order.  The parties jointly requested the judge who entered the April 2024 order hear the motions.  However, the judge who heard the motion in April had been reassigned to a different Division.

On January 16, 2025, the Civil Division Presiding Judge entered an order denying the parties' objection to a different judge hearing the pending motions.  In a decision placed on the record, the judge reviewed Rule 4:5B-1, Rule 4:42-2(b), and our decision in New Jersey Division of Child Protection & Permanency v. D.H., 469 N.J. Super. 107 (App. Div. 2021).  The judge stated "when possible, . . . there should be continuity in the pretrial determinations."

However, the judge stated the language of Rule 4:5B-1 "doesn't create any sort of legal entitlement to have one specific judge preside over a second trial or

A-2484-24

related" proceeding.  The judge noted the Rule provides for the same judge to hear applications "insofar as is practicable and absent exceptional circumstances."  Quoting from D.H., 469 N.J. Super. at 126, the judge stated: "'[T]his practical exception to the general preference is vital in enabling the Assignment Judge and Presiding Judges of each vicinage to utilize judicial resources in an optimal manner, and in managing vacancies and case flows among the various dockets.'"

The judge recognized there could be circumstances "where there is . . . something unique or specific to a particular case, that would make it necessary . . . or makes it most appropriate for there to be a determination made by a judge no longer assigned to the division."  However, the judge concluded that was not "the circumstances here."  Instead, the judge found the first judge's decision was not "based upon any sort of hearing or evaluation . . . of any witness testimony." The judge noted "[t]he motion record is available to" the second judge prior to ruling on the pending motions.  Moreover, the motion for reconsideration would "point out any . . . additional evidence" or issues the parties raised for reconsideration.  In making an "administrative determination," the judge denied the parties' requests.

A-2484-24

On February 13, 2025, the parties argued the motions for summary judgment and reconsideration before the new judge. Plaintiff requested a hearing in accordance with Kemp ex rel. Wright v. State, 174 N.J. 412 (2002). The judge stated Rule "104 hearings are generally favored before there's a . . . determination of whether . . . a report [or opinion] runs afoul of Daubert." The judge stated he was denying the request for a Kemp hearing because "the issue comes down to . . . is it weight, or is it inadmissible? If it's inadmissible, I don't need a Kemp [h]earing."

In a written decision accompanying the March 2025 order, the judge stated he agreed with the prior judge's decision and determined there was no reason to disturb the April order. The judge added Dr. Luciani "acknowledged [during his deposition] that physiology is not his area of expertise, admitting, 'Yeah. I think that that's -- you know that's a little bit out of my lane.'" Therefore, the judge concluded Dr. Luciani was "not competent to opine on causation based on physiological considerations."

The court concluded the April 2024 order and the denial of reconsideration left plaintiff "without a causation expert" and thus the court granted defendant's motion for summary judgment.

A-2484-24

## II.

On April 16, 2025, plaintiff appealed.  On October 31, 2025, we granted a motion by the New Jersey Association for Justice (NJAJ) to appear as amicus curiae, permitting the filing of responsive briefs by the other parties.

On appeal, plaintiff argues the trial court erred in barring Dr. Luciani's testimony.  Plaintiff contends Dr. Luciani's opinion was based on "various articles"; the "report and . . . treatment of M.M."; literature on the subject; experience "deal[ing] with upwards of 60 shoulder-dystocia cases during his career"; and "support in the scientific community."  Plaintiff asserts the trial court's conclusion that Dr. Luciani's "'theories ha[d not] been scientifically tested or accepted in the scientific community' was clearly mistaken."

Further, plaintiff argues "Dr. Luciani reviewed the literature that . . . advanced [Dr. Arole's] . . . unsupported hypothesis and describe[d] why that literature [wa]s flawed."  She contends the trial court mistakenly "reviewed" this literature and found Dr. Luciani had relied on it in rendering his opinion.  She argues this mistake was "certainly material."

In addition, plaintiff argues the trial court impermissibly relied upon "the credibility of defendant."  She contends Dr. Arole's "claims that she didn't pull

16

on" M.M.'s head does not render Dr. Luciani's report and testimony a net opinion, but instead the issue is "for a jury to decide."

Plaintiff contends Dr. Luciani's "methodology, a form of differential diagnosis based on experience and training [is] used every day by medical professionals," (citing Creanga v. Jardal, 185 N.J. 345, 357-58 (2005)). She asserts that "[b]y eliminating . . . other possible causes, Dr. Luciani is able to testify to a reasonable degree of medical certainty that this injury, given its nature, severity and permanence, was caused by excessive lateral traction." (Emphasis omitted).

Plaintiff argues the trial court "over-extended In re Accutane, 234 N.J. 340 (2018), to non-complex, accepted theories of causation." (Citation reformatted). She asserts the trial court's role as a "[g]atekeeper is . . . important but . . . limited." She argues "[t]he gatekeeper should not be tallying publications for opposing sides or deciding which publications are 'right'" or "weighing evidence." According to plaintiff, experts' opinions should be subject to cross-examination with the jury to determine the weight of the opinions.

Plaintiff argues Kemp "solidified the requirement of a pretrial Rule 104 hearing for assessing an expert's testimony." (Emphasis omitted). She asserts "a Kemp hearing is a common pretrial occurrence for resolving the reliability of

A-2484-24

expert scientific testimony," (citing In re Accutane, 234 N.J. at 350).  Further,

she states she requested a Kemp hearing so "Dr. Luciani could have resolved the

mistaken impression that he was claiming to rely on all of the articles mentioned

in his report," but that "was not done."

Regarding the trial court's reconsideration of the April order, plaintiff

argues Rule 4:42-2(b) is "mandatory" and the decision not to assign the motion

to the first judge was an error.

NJAJ argues "[t]he decision of the court . . . has dramatically changed how

parties may present expert evidence."  NJAJ contends the trial court failed to

"recognize that an expert's opinion may be based upon his education, training,

experience, or research."  It asserts:

> Dr. Luciani's opinion was more than adequately
> supported by his "residency training, CME, review of
> gynecological journals[,] textbooks[,] and bulletins,
> interaction with colleagues[,] as well as the continuous
> active practice of OB[/]GYN for over 43 years," and his
> delivery of approximately 6,500 babies, . . . his
> discussion with colleagues, and his involvement as an
> expert in hundreds of medical negligence cases over
> more than 20 years.

In addition, NJAJ asserts "medical experts may offer causation opinions

in malpractice cases using a differential diagnosis," (citing Creanga, 185 N.J. at

356).  It argues:  "Dr. Luciani reached []his conclusion by employing a

18

differential diagnosis to rule out the probability that [M.M.]'s brachial plexus injury was due to any other possible factors."

Moreover, NJAJ argues the trial court's gatekeeping role is implicated when a party is "espousing a new theory in medical cause-and-effect cases," (citing In re Accutane, 234 N.J. at 389) (emphasis omitted). However, it contends the court's reliance on In re Accutane is misplaced because Dr. Luciani has not rendered "a new theory about causation," and instead offers the same opinion he rendered in a case decided twenty-four years ago.

Finally, NJAJ argues the trial court "conducted what is best described as a 'mini-bench trial' utilizing only depositions and articles, but without a full record or even a Rule 104 hearing[,] which would have provided the benefit of examination and cross-examination." It contends plaintiff was "entitled to a Rule 104 hearing regarding" Dr. Luciani's opinion pursuant to Kemp.

"Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Primmer v. Harrison, 472 N.J. Super. 173, 187 (App. Div. 2022) (quoting Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017)) (internal quotation marks omitted). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg

v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"To prove medical malpractice, ordinarily, 'a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (quoting Gardner v. Pawliw, 150 N.J. 359, 375 (1997)). "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury." Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (App. Div. 2002). Where a plaintiff cannot present the requisite expert proof "summary judgment must be granted in favor of defendants." Mynster, 213 N.J. at 468. Indeed, Rule 4:46-2(c) requires:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

In effectuating its gatekeeper role, the "trial court determines the admissibility of expert testimony, N.J.R.E. 702 and N.J.R.E. 703 frame its

20

analysis." Townsend v. Pierre, 221 N.J. 36, 53 (2015). Rule 702 "governs the admission of expert testimony." Kemp, 174 N.J. at 423. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

Rule 702 "imposes three core requirements for the admission of expert testimony." Townsend, 221 N.J. at 53. The requirements include:

> "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony."
>
> [Ibid. (quoting Creanga, 185 N.J. at 355).]

Trial courts "should use the . . . Rule [104] hearing . . . to assess the soundness of the proffered methodology and the qualifications of the expert." Kemp, 174 N.J. at 426 (quoting Rubanick v. Witco Chem. Corp., 125 N.J. 421, 454 (1991)). The Court has noted "the importance of in limine hearings under Rule 104(a) in making the reliability determination required under Rule 702." Id. at 428 (quoting Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (1999)).

21

"Presently, a <u>Kemp</u> hearing is a common pretrial occurrence for resolving the reliability of expert scientific testimony." <u>In re Accutane</u>, 234 N.J. at 350. The Court has "acknowledged . . . [the] importance of providing the party defending the admission of evidence a fair and adequate opportunity to be heard." <u>Kemp</u>, 174 N.J. at 428 (citing <u>Padillas</u>, 186 F.3d at 417). The <u>Kemp</u> Court also cited <u>In re Paoli Railroad Yard PCB Litigation</u>, 916 F.2d 829, 854 (3d. Cir. 1990), where the court reversed because plaintiff was not "'provide[d] . . . with sufficient process for defending their evidentiary submissions.'" <u>Id</u> at 429 (quoting <u>Padillas</u>, 186 F.3d at 417).

The decision to hold a hearing rests on the sound discretion of the court. <u>See</u> <u>Kemp</u>, 174 N.J. at 428. However, the Court has stated in exercising its discretion, the trial court must be mindful of "the . . . opportunity to be heard, especially when summary judgment may result from exclusion of the evidence." <u>Id.</u> at 428.

Moreover, in <u>Kemp</u>, the Court was "persuaded that the lack of a Rule 104 hearing may adversely have affected plaintiffs' ability to present their expert's testimony in its best light." <u>Id.</u> at 432. The Court noted the expert's "testimony was taken only at defendants' deposition, [therefore,] the trial court did not have the benefit of an orderly and comprehensive presentation of his expert testimony

22

elicited by plaintiff[1]'s counsel." Ibid.  The Court stated the "deposition afforded defendants' counsel the opportunity to challenge and cast doubt on the reliability of [the expert's] opinion." Ibid.  However, it was "not satisfied that the record of that deposition fairly reflect[ed] the more balanced and complete presentation of his opinion that a Rule 104 hearing would have afforded." Ibid.

Therefore, the Court concluded:

> [A]lthough the need for a hearing is remitted to the trial court's discretion, in cases in which the scientific reliability of an expert's opinion is challenged and the court's ruling on admissibility may be dispositive of the merits, the sounder practice is to afford the proponent of the expert's opinion an opportunity to prove its admissibility at a Rule 104 hearing.
>
> [Id. at 432-33.]

The Court concluded a fair opportunity to be heard was necessary despite "the expert's opinion in its present form [wa]s not admissible," id. at 415, and plaintiff had "failed to demonstrate that their expert's methodology was scientifically sound." Id. at 432.

Rule 703 "mandates that expert opinion be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'"

23                                                                A-2484-24

<u>Townsend</u>, 221 N.J. at 54 (quoting <u>Polzo v. Cnty. of Essex</u>, 196 N.J. 569, 583, (2008)) (internal quotations omitted). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission of an expert's conclusions that are not supported by factual evidence or other data.'" <u>Id.</u> at 53-54 (alteration and omission in original) (quoting <u>Polzo</u>, 196 N.J. at 583). "The rule requires that an expert 'give the why and wherefore that supports the opinion, rather than a mere conclusion.'" <u>Id.</u> at 54 (quoting <u>Borough of Saddle River v. 66 E. Allendale, LLC</u>, 216 N.J. 115, 144 (2013)) (internal quotation marks omitted). "The net opinion rule is not a standard of perfection." <u>Ibid.</u> "When it decides a motion to strike an expert report, a trial court may conduct a hearing under N.J.R.E. 104(a)." <u>Ibid.</u> at n.5

Rule 104(a) provides:

> In General.
>
> > (1) The court shall decide any preliminary question about whether a witness is qualified . . . or evidence is admissible. . . .
> >
> > (2) The court may hear and determine such matters out of the presence or hearing of the jury.

Applying this well-established law, we conclude the trial court misstepped in denying plaintiff's request for a <u>Kemp</u> or Rule 104 hearing and in applying

24

Rule 702 and Rule 703. The trial courts' attempts to decipher Dr. Luciani's opinion and its foundation using only his report, deposition testimony, and review of the literature was commendable. However, as plaintiff argues, this approach led the court to conclude that Dr. Luciani relied on articles he had cited to refute Dr. Arole's theory, rather than to support his own opinion. Indeed, our review of the record fails to reveal the trial courts' considerations of Dr. Luciani's criticisms of the cited articles. Although Dr. Arole contends the court's purported "misstate[ment] . . . is immaterial," that conclusion cannot be reached absent a balanced and complete presentation from Dr. Luciani.

In addition, like the Court in <u>Kemp</u>, we are concerned with granting summary judgment based on a report and one-sided deposition. Even the court's focus on Dr. Luciani's deposition testimony, particularly his comment about his "lane" of expertise, may have been given disproportionate weight in the overall assessment.

Our review of the deposition colloquy reveals:

> [Attorney for Dr. Arole:] And pushing the spine can have an effect on creating space or separating the space between the head and neck and the shoulder; right?
>
> [Dr. Luciani:] There's pretty much no room in there to do that kind of thing. It's a pretty tight squeeze trying to get a baby out of there. So I think that that is

probably a question that you would better ask to physiologists, those -- you know, those types of people.

You know, I probably do not feel a hundred percent in answering that question. I don't think I would be able to give you a good expert opinion to say anything like that, and one of the reasons is that I've never really even read anything to that effect that has even addressed that type of question and what an answer would be.

[Attorney for Dr. Arole:] In other words, it's not within your area of expertise?

[Dr. Luciani:] Yeah, I think that that's -- you know, that's a little bit outside of my lane.

The first judge concluded this testimony prohibited Dr. Luciani from offering an opinion on "excessive force and traction" and the judge on reconsideration concluded this testimony prohibited Dr. Luciani from offering an opinion on "physiological considerations." However, our review of the deposition transcript discloses Dr. Luciani testified regarding force and traction and physiology throughout and without objection. Given the nature of depositions, this is not surprising. However, without the benefit of a "balanced and complete presentation" and an "adequate opportunity to be heard," we are unable to conclude whether this lone exchange was taken out of context. See Kemp, 174 N.J. at 432. We offer no opinion in this regard.

A-2484-24

On remand, during the Rule 104 hearing, the court will have a more robust opportunity to consider Dr. Luciani's expertise, opinions, and testimony regarding articles that may support his position, as well as his criticism of the articles that may support Dr. Arole's position. We offer no opinion on whether Dr. Luciani's testimony should be admitted.

We briefly add there was no error in denying the parties' request to have the original judge hear the motions for reconsideration and summary judgment for the reasons stated by the Civil Division Presiding Judge. See D.H., 469 N.J. Super. at 125; see also R. 4:5B-1; R. 4:42-2(b). In addition, we reject plaintiff's and NJAJ's assertion that the court overextended its gatekeeping role regarding the admissibility of expert testimony. See Townsend, 221 N.J. at 53; see also N.J.R.E. 702; N.J.R.E. 703.

To the extent any argument raised by plaintiff has not been explicitly addressed in this opinion, it is because the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

27

A-2484-24